1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY AHARONIAN,                                        No. C 04-5190 MHP

                    Plaintiff,

          v.
                                                         **MEMORANDUM & ORDER**
                                                         **Re: Motion to Dismiss**
ALBERTO R. GONZALES, in his official capacity as
the Attorney General of the United States,

                    Defendant.
_____

          Plaintiff Gregory Aharonian has brought the present action seeking a declaration that federal

copyright law cannot properly be applied to computer source code—the instructions which are

ultimately carried out by a computer (in some cases after being compiled, translated, or assembled).

Now before the court is defendant Alberto Gonzales's motion to dismiss plaintiff's complaint.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the

court rules on the motion as follows.

BACKGROUND[1]

          Plaintiff is a computer programmer and self-described "champion[ of] the American public's

interests in improving the quality of patents and copyrights."  Complaint ¶ 13.  One of plaintiff's

goals is to reduce the costs associated with software patent and copyright litigation.  Id. ¶ 14.  In

1

order to reduce the costs associated with litigation, plaintiff presently conducts "prior art" searches on behalf of his clients, looking for preexisting, functionally identical software that can be used to invalidate software patents and to bring an early end to meritless lawsuits. See generally 35 U.S.C. § 102.

Plaintiff now hopes to construct an automated prior art search tool which will facilitate locating relevant software prior art and will help his clients avoid building software that infringes existing patents and copyrights. The proposed search tool consists of three elements: (1) an "expert" system, containing a programmatic representation of patent and copyright law; (2) a database of existing software source code (or some derivation thereof), to be searched; and (3) an analysis tool which applies patent and copyright law to the source code stored in the database in order to determine the likelihood of infringement or invalidity. Complaint ¶¶ 15–17. Plaintiff intends to include copyrighted source code in the database without regard to the terms of any license for use of the source code. Complaint ¶ 16. In this lawsuit, plaintiff seeks a declaration that no valid provision of copyright law prevents him from doing so.

Plaintiff challenges the validity and scope of copyright protection for software source code on a number of grounds. First, plaintiff seeks a declaration that computer source code consists entirely of "algorithms" and "data structures," both of which are uncopyrightable "ideas" or "processes" that must be protected through patent law. Complaint ¶ 34; see 17 U.S.C. § 102(b). Second, plaintiff argues that the terms "idea" and "expression" in the copyright laws are fatally vague under the Due Process Clause of the Fifth Amendment, rendering the statutes unconstitutional as applied to software source code. Third, plaintiff claims that Congress has never properly added software source code to the types of works that are covered by copyright law. Fourth, plaintiff argues that the phrase "mathematical [sic] concepts" in 17 U.S.C. section 102(b) is fatally vague under the Due Process Clause.[2] Fifth, plaintiff argues that the phrase "computer program" as defined in 17 U.S.C. section 101 is fatally vague under the Due Process Clause.

Defendant offers arguments opposing plaintiff's contentions on the merits and also challenges plaintiff's standing to bring the lawsuit.

2

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

DISCUSSION

I.    Standing

Under Article III of the United States Constitution, federal courts cannot entertain a litigant's claims unless that party demonstrates concrete injury, satisfying the burden to demonstrate both constitutional and prudential standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To meet constitutional requirements, a plaintiff must show that (1) he has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent"; (2) the injury is fairly traceable to the challenged actions of the defendant; and, (3) "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." Id. at 560–61 (internal quotations and citations omitted). Prudential requirements for standing include (1) whether plaintiff's alleged injury falls within the "zone of interests" protected by the statute or constitutional provision at issue, (2) whether the complaint amounts to generalized grievances that are more appropriately resolved by the legislative and executive branches, and (3) whether the plaintiff is asserting his or her own legal rights and interests, rather than those of third parties. See Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1179 (9th Cir. 2000); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979); Powers v. Ohio, 499 U.S. 400, 410 (1991).

United States District Court
For the Northern District of California

3

United States District Court

For the Northern District of California

Plaintiff alleges several injuries as a basis for standing.  Among these, plaintiff claims that he is economically injured by being unable to include copyrighted works in his planned database.  Complaint ¶¶ 13–20.  Defendant argues that the alleged harm is speculative—that there is no injury in fact—as plaintiff has not been threatened with criminal prosecution under the copyright laws.  For the same reason, defendant also argues that the harm is not caused by defendant's conduct.  Finally, defendant suggests that plaintiff states a generalized grievance that should be dismissed for prudential reasons.

The recent challenge to the constitutionality of the Sonny Bono Copyright Term Extension Act of 1998 ("CTEA") provides guidance in evaluating whether plaintiff has suffered an injury in fact and whether defendant is a proper party to a lawsuit that comprises a general challenge to the constitutionality of copyright law.  In Eldred v. Reno, the district court considered whether a group of plaintiffs had standing to challenge the CTEA, which increased the length of copyright protection for works not yet in the public domain, in a lawsuit against Janet Reno, then attorney general of the United States.  Eldred v. Reno, 74 F. Supp. 2d 1 (D.D.C. 1999), aff'd, 239 F.3d 372 (D.C. Cir. 2001), aff'd sub nom Eldred v. Ashcroft, 537 U.S. 186 (2003).  The plaintiffs' businesses involved the copying of works already in the public domain.  Eldred, 74 F. Supp. 2d at 2.  The plaintiffs alleged that they planned to make use of works that would be in the public domain but for the passage of the CTEA.  The district court concluded that the plaintiffs had standing, and the Court of Appeals agreed:

> The plaintiffs benefit from using works in the public domain and, but for the CTEA, they would be able to exploit additional works the copyrights to which would have expired in the near future. As such, they suffer an injury in fact that is traceable to the CTEA and that we could redress by holding the Act invalid.

Eldred, 239 F.3d at 375.  The Eldred courts did not evaluate causation by considering the likelihood of prosecution, but rather by considering the effect that compliance with the statute had on plaintiffs' businesses.

Here, as well, plaintiff has articulated a specific economic benefit from copying currently protected material.  Plaintiff has an existing business which includes evaluating source code as potential prior art.  Plaintiff has expressed an intent to incorporate copyrighted source code into his

4

prior art database without regard for any licensing terms, which (as defendants do not dispute) would be a clear violation of copyright law.  Incorporating copyrighted source code would make his database more comprehensive, and therefore more valuable as a tool for locating prior art. Abrogating copyright protection for source code would allow plaintiff to reap this economic benefit. Defendants' arguments with respect to injury and causation—that plaintiff has not alleged any threatened prosecution by defendant, and that plaintiff's economic injury is attributable not to defendant, but to the copyright owners themselves—would apply equally to the plaintiffs in Eldred. As there are no material differences between the harms alleged and parties named in this suit and those in Eldred, the court finds that plaintiff has satisfactorily alleged both injury-in-fact and causation.

Defendants argue that Ninth Circuit cases such as San Diego County Gun Rights Commission v. Reno, 98 F.3d 1121 (9th Cir. 1996), compel a different conclusion.  In San Diego County, a group of militia members, gun dealers and gun rights advocates brought a constitutional challenge to a portion of the Violent Crime Control and Law Enforcement Act of 1994 ("Crime Control Act") that imposed new licensing requirements on firearm dealers.  Id. at 1124.  Plaintiffs sought to establish standing based on fear of prosecution under the Crime Control Act.  The court rejected this argument, noting that plaintiffs had not shown any specific threat of criminal prosecution.  See id. at 1128 ("Plaintiffs have established at most a possibility of their eventual prosecution under the Crime Control Act, which is clearly insufficient to establish a 'case or controversy'").

The cited language in San Diego County is inapplicable here because, in addition to potential criminal prosecution, plaintiff alleges economic damage to his business as a result of his inability to make use of copyrighted works.  In a later section of San Diego County, not cited by defendants, the court considered the alleged economic harms to plaintiffs' businesses flowing from the Crime Control Act.  The court found that plaintiffs had shown injury in fact, noting that "[e]conomic injury is clearly a sufficient basis for standing," but found that the economic injury was not caused by the Crime Control Act, as "the Act is neither the only relevant piece of legislation nor the sole factor affecting the price of grandfathered weaponry."  Id. at 1130.  Here, unlike in San Diego County, it is

United States District Court

For the Northern District of California

1    not disputed that but for copyright law, plaintiff could include copyrighted material in his database,

2    and that inclusion of the material would make his database more valuable.

3         The other cases cited by defendant also consider threatened criminal prosecution, and not

4    economic harm to a plaintiff's business.  See, e.g., Thomas v. Anchorage Equal Rights Comm'n, 220

5    F.3d 1134, 1137–38 (9th Cir. 2000), cert. denied, 531 U.S. 1143 (2001) (considering fear of liability

6    under Alaska statutes outlawing discrimination based on marital status); Stoianoff v. Montana, 695

7    F.2d 1214, 1224 (9th Cir. 1983) (considering fear of prosecution under Montana's Drug

8    Paraphernalia Act); Boating Indus. Ass'ns v. Marshall, 601 F.2d 1376, 1382–83 (9th Cir. 1979)

9    (considering fear of prosecution under the Longshoremen's and Harbor Workers' Compensation

10   Act).

11        This is not to say that all allegations of economic harm related to copyright law will be

12   sufficient to meet the constitutional requirements for standing.  For example, the mere assertion of a

13   desire to copy, with no showing of an actual past or future business practice or actual economic

14   benefit from copying, would not suffice.  Here, however, plaintiff has an existing business which

15   involves searching for potentially copyrighted prior art, and he has made a credible argument that

16   incorporating (i.e. copying) such material into an automated search tool would result in additional

17   profits.[3]

18        Turning now to the prudential question of whether plaintiff is attempting to litigate an

19   improper "generalized grievance," defendant argues that plaintiff is seeking a "complete overhaul of

20   the copyright system as it pertains to computer software," which would require the court to legislate

21   from the bench.  Plaintiff's second through fifth claims, however, seek only a declaration that

22   copyright law is unconstitutionally vague as applied to software source and object code, or that

23   copyright law may not be applied to software because Congress has not properly added software to

24   the types of works that are protected.  In order to adjudicate these claims, the court need not craft

25   any complex new legal standards.  The fact that finding copyright law unconstitutional would affect

26   many people does not transform plaintiff's claim into a generalized grievance, as standing depends

27   only on whether plaintiff has alleged a concrete, particular harm.  See Lujan, 504 U.S. at 572–73

28   (distinguishing generalized grievances, which involve the assertion of "abstract, self-contained,

United States District Court

For the Northern District of California

noninstrumental [rights]" from actual controversies, "where concrete injury has been suffered by many persons").

Plaintiff's first claim is more troubling, in that it seeks a more prescriptive declaration that software is made up entirely of "data structures" and "algorithms," both of which are potentially patentable "ideas" that are beyond the scope of copyright protection.  It would be unwise indeed for this court to make sweeping general pronouncements about the nature of software or the relationship between patent and copyright law, particularly where making such a pronouncement would have no clear effect on plaintiff's ability to create his proposed database.  Plaintiff has expressed a general intent to "transform the expression of a source code while retaining its functionality, making the source code dissimilar enough to escape charges of software infringement."  Complaint ¶ 20. Plaintiff has not provided an example of such a transformation.  Without a detailed description of what plaintiff intends to copy, any ruling by the court on the nuances of copyright law would be purely advisory.

In addition, plaintiff's first claim appears to betray a misunderstanding of the differences between copyright and patent law.  A declaration that software consists entirely of "ideas"—data structures and algorithms—has no bearing on the applicability of copyright law to software source code, which, like all copyrightable material, is a particular written *expression* of ideas.[4]  As a programmer, plaintiff is well aware that there is nearly limitless choice in how a particular data structure or algorithm (or combination of data structures and algorithms) is implemented in actual source code.  See Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1253 (3d Cir. 1983) (noting that software is copyrightable to the extent that "other programs can be written or created which perform the same function" as the copyrighted software) ; see generally Turing Completeness, in Wikipedia: The Free Encyclopedia, at http://en.wikipedia.org/wiki/ Turing-complete (last visited Nov. 15, 2005) (noting that nearly all programming languages are equivalent in their computational power, despite having different surface features).  A programmer has a choice from among many programming languages, each having a distinct idiom which may lend itself more or less readily to a particular programming task.  See id.  Within the confines of a single programming language and a given programming task, a programmer has great discretion as

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

to how to structure and organize the code, how to comment the code, and how to format the code so it is comprehensible to other programmers.  Even the choice of names for functions/methods, or variables/objects includes an element expression—for example, the bizarre allusion to military slang in names such as "foo" and "bar."  See Foobar, in Wikipedia: The Free Encyclopedia, at http://en.wikipedia.org/wiki/Fubar (last visited Nov. 15, 2005).   Moreover, these expressive choices have value, as any programmer who has been required to decipher badly written code can attest.

In sum, if plaintiff copies source code that is protected by copyright law, he infringes the copyright regardless of whether the ideas underlying the source code are patentable.  See Sony Computer Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 602 (9th Cir.), cert. denied, 531 U.S. 871 (2000).  Conversely, if plaintiff independently creates software that is functionally identical to other software, he does not infringe any copyright on the other software's source code, even if his independently created source code is nearly identical to the copyrighted source code.  See Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir.) (L. Hand, J.), cert. denied, 298 U.S. 669 (1936).  Plaintiff's proposed database appears to involve some middle possibility, in which plaintiff first creates an abstraction or derivative of copyrighted source code and then copies the derivative.  Whether the creation of the derivative would infringe the copyright on the original source code is a fact-specific determination that this court is unable to articulate as a general rule.  Plaintiff's first claim states a generalized grievance that this court declines to adjudicate.

The court will now consider the merits of plaintiff's justiciable claims.

II.    Plaintiff's Claims

A.    Vagueness of "Idea" and "Expression"

Plaintiff argues that the terms "idea" and "expression," as used in the copyright statutes, are unconstitutionally vague when applied to software.  Plaintiff notes that the copyright laws may give rise to criminal liability, see 17 U.S.C. section 506, and that limitations on copying touch on First Amendment rights of expression, see Eldred, 537 U.S. at 218–19. The essence of plaintiff's argument appears to be that "idea" and "expression" should have special meaning in the context of software source and object code, and that Congress has provided no guidance as to what the special

8

meaning should be, leaving interpretation of the statute to the courts.  According to plaintiff, notice via judicial interpretation is unconstitutional.

A statute is unconstitutionally vague if "[people] of common intelligence must necessarily guess at its meaning and differ as to its application."  In re Doser, 412 F.3d 1056, 1062 (9th Cir. 2005).  Courts scrutinize criminal statutes that threaten the exercise of otherwise permissible First Amendment rights with "particular care."  United States v. Thomas, 864 F.2d 188, 194 (D.C. Cir. 1988).  Language is unavoidably inexact, however, and "courts do not require that an enactment touching on First Amendment interests set forth the precise line dividing proscribed from permitted behavior."  Id. at 195.

Evaluated under the preceding legal standard, plaintiff's claims fail for three reasons.  First, the fact that words in a statute require a certain degree of judicial interpretation is not merely permissible—it is a bedrock assumption of our common law system.  Words such as "due process of law" (U.S. Const. amend V), "obvious" (35 U.S.C. section 103(a)), or "restraint of trade" (15 U.S.C. section 1) are necessarily broad as a result of the unforeseeable circumstances that may arise in a particular case.  Plaintiff's unqualified attack on "[n]otice via ad hoc judicial decisions" is, at its root, a claim that case-by-case adjudication is lawless.  See Complaint ¶ 30.  Even in the context of laws that affect First Amendment rights, it is not constitutionally required "that a person contemplating a course of behavior know with certainty whether his or her act will be found to violate the proscription."  Thomas, 864 F.2d at 195.  Plaintiff's complaint that he must obtain assistance from the courts in determining the scope of his rights is not a cognizable Due Process violation.

Second, although plaintiff is correct that statutes must be more carefully drawn where they impose criminal liability or impinge on First Amendment rights, plaintiff overlooks the fact that copyright law works in tandem with the First Amendment to further free expression.  Indeed, "copyright's purpose is to *promote* the creation and publication of free expression."  Eldred v. Ashcroft, 537 U.S. at 219 (emphasis in original).  While it may be that certain prohibitions by the copyright laws are in tension with the First Amendment, the conduct alleged by plaintiff—the wholesale copying of source code—lies at the core of what copyright law seeks to protect.  Thus

9

1    there is no problem of vagueness or lack of notice in this case.

2          Third, this court is unwilling and unable to ignore settled law that copyright law properly

3    applies to software.  See, e.g., Sony, 203 F.3d at 602; Johnson Controls, Inc. v. Phoenix Control

4    Sys., Inc., 886 F.2d 1173, 1175 (9th Cir. 1989).  Even if this court found plaintiff's arguments to

5    have merit, it would remain bound by clear Ninth Circuit precedent.  Moreover, as plaintiff

6    acknowledges, it is a commonplace of copyright jurisprudence that the boundary between idea and

7    expression is complex:

8          The test for infringement of a copyright is of necessity vague. In the case of verbal
           "works" it is well settled that although the "proprietor's" monopoly extends beyond
9          an exact reproduction of the words, there can be no copyright in the "ideas" disclosed
           but only in their "expression."  Obviously, no principle can be stated as to when an
10         imitator has gone beyond copying the "idea," and has borrowed its "expression."
           Decisions must therefore inevitably be ad hoc.

11   Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand, J.) (cited

12   at Complaint ¶ 30).  Plaintiff, strangely, cites this passage in support of his argument that the "idea" /

13   "expression" distinction is unconstitutionally vague.  The fact that the test is necessarily somewhat

14   vague does not mean that it is unconstitutionally so.

15         Defendant's motion to dismiss plaintiff's second claim is therefore granted.

16

17         B.      Vagueness of "Mathematical Concepts" and "Computer Program"

18         Plaintiff further alleges that the phrases "mathematical [sic] concepts" and "computer

19   program" are fatally vague as used in the copyright statutes.  This argument fails for two of the

20   reasons already discussed:  this court is bound by clear Ninth Circuit precedent upholding the

21   application of copyright law to software, and plaintiff has failed to allege anything beyond the

22   normal process of judicial interpretation of statutory language.

23         Moreover, as defendant correctly points out, the phrase "mathematical concepts" does not

24   appear in 17 U.S.C. section 102(b).  Rather, the statute precludes copyright protection for

25   "concepts."  Courts have treated the word "concept" similarly to the word "idea," which, as already

26   discussed, is not fatally vague.  See, e.g., Harper & Row, Publishers, Inc. v. Nation Enter., 471 U.S.

27   539, 581 (1985) ("Copyright does not preclude others from using the *ideas* or information revealed

28
                                                    10

United States District Court

For the Northern District of California

by the author's work. It pertains to the literary . . . form in which the author expressed intellectual *concepts*") (citation omitted and emphasis added).

Finally, with respect to "computer program," plaintiff provides a list of new or emerging technologies—"DNA, membrane, quantum, optical and neural network computers"—but provides no cogent argument as to why the current statutory definition of "computer program" in 17 U.S.C. section 101 fails to encompass them. <u>See</u> Complaint ¶ 86.

Defendant's motion to dismiss plaintiff's fourth and fifth claims is therefore granted.

C.    <u>Lack of Valid Enactment</u>

Plaintiff's final argument is that Congress has never properly extended copyright protection to software. As with plaintiff's preceding arguments, this court is unwilling to depart from Ninth Circuit cases applying copyright law to software. In addition, the language of section 102(b) is deliberately open-ended, permitting flexible application of copyright law to evolving technology. <u>See</u> 17 U.S.C. § 102(b) ("Works of authorship *include* the following categories:. . .") (emphasis added). No specific legislative action to add software was required.

Defendant's motion to dismiss plaintiff's third claim is therefore granted.

III.    <u>Leave to Amend</u>

The sole remaining issue is whether leave to amend plaintiff's complaint should be granted. Although it is true that pursuant to Federal Rule of Civil Procedure 15(a) leave to amend a party's pleadings should be liberally granted, a district court need not permit a plaintiff to amend his or her complaint if it determines that the defects in the pleadings "could not possibly be cured by the allegation of other facts." <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995) (citation omitted). Here, plaintiff has failed to identify a cognizable legal theory that would permit him to obtain the relief that his complaint requests. Because granting leave to amend would be futile, the court finds it appropriate to dismiss plaintiff's claims with prejudice.

**United States District Court**

For the Northern District of California

11

CONCLUSION

For the above reasons the court hereby GRANTS defendant's motion to dismiss plaintiff's Complaint with prejudice.  The clerk shall close the file.

IT IS SO ORDERED.

Date: January 3, 2006

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

United States District Court
For the Northern District of California

12

ENDNOTES

1. Unless otherwise noted, background facts are taken from plaintiff's Complaint.

2. The phrase "mathematical concepts" does not actually appear in section 102(b).  Rather, the statute precludes copyright protection for "concepts."

3. The court makes no finding as to the technical feasibility of building such a system.

4. Cases such as <u>In re Alappat</u>, 33 F.3d 1526 (Fed. Cir. 1994) and <u>In re Lowry</u>, 32 F.3d 1579 (Fed. Cir. 1994), which clarify the applicability of patent law to data structures and algorithms in the abstract, say nothing about the applicability of copyright law to particular expressions of those data structures and algorithms, or to source code more generally.

United States District Court

For the Northern District of California

13